72 F.3d 920
 315 U.S.App.D.C. 281
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Ezell Adine STARKS, Appellant.
 No. 94-3135.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 5, 1996.
 
 Before: SILBERMAN, BUCKLEY, and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel. While the issues presented occasion no need for a published opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 36(b) (January 1, 1994). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the judgment of the district court is affirmed, for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 41(a)(1) (January 1, 1994). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Appellant, Ezell A. Starks, seeks reversal of his conviction on one count of distribution of cocaine base. Starks asserts that the trial court erred by sequestering the jury, by conducting an inadequate voir dire concerning the sequestration, by failing to suppress evidence of a suggestive and unreliable identification, by denying his motion to dismiss the indictment due to outrageous government conduct, by failing to instruct the jury concerning a mug shot introduced into evidence, and by providing the jury with transcripts of surveillance tapes without adequate cautionary instructions. None of these claims justifies reversal.
 
 
 5
 Appellant argues first that the sequestration of the jury undermined the presumption of his innocence. A trial court's decision to sequester a jury is committed to its broad discretion and can never justify a reversal unless the sequestration worked to the "actual prejudice" of the defendant. United States v. Childress, 58 F.3d 693, 703 (D.C.Cir.1995). In any event, we are satisfied that the trial court had ample reason to believe that some measure of juror protection was required during appellant's second trial, and we have no grounds to quibble with the measure selected. The evidence of juror tampering during appellant's first trial and the evidence of disdain for legal process demonstrated by appellant's cohorts amply support the trial court's decision. We note that mere sequestration is a far milder means of assuring juror safety and protecting the integrity of a trial than is the empaneling of an anonymous jury. Juror anonymity may impinge on a defendant's ability to conduct voir dire and exercise peremptory strikes while sequestration alone will not. We have nonetheless recognized a district judge's broad discretion to empanel anonymous juries. See, e.g., United States v. Edmonds, 52 F.3d 1080, 1090 (1995), cert. denied, 64 U.S.L.W. 3379 (Nov. 27, 1995).
 
 
 6
 Trial counsel objected to the sequestrations, but did not object to the trial court's voir dire with respect to the sequestration--indeed, the record reflects that the trial court incorporated into the voir dire every suggestion offered by defense counsel on the subject. The trial court's failure to conduct a different voir dire is thus reversible only as plain error. We are satisfied that the trial court's description of sequestration as a perfectly routine matter dissipated whatever taint might have existed in the jurors' minds. Apparently, the sequestration gave rise to apprehension in the mind of only one juror who, in turn, engendered her trepidation in a second juror--both of whom were struck from the panel. Without an objection from defense counsel to the adequacy of the voir dire (and we do not wonder that one was not made) and without a substantially greater showing that jurors were inclined to attribute guilt to the defendant due to the sequestration, we cannot say that the trial court erred at all, much less plainly, by conducting the limited voir dire reflected in the record. Nor do we believe that the trial court erred in denying appellant's motion to suppress DEA Agent Ronald Woods' identification testimony. The circumstances of the initial identification of appellant's photograph may have been suggestive, but that identification had sufficient hallmarks of reliability that its admission could hardly be said to have denied appellant due process. See Manson v. Brathwaite, 432 U.S. 98, 114 (1977). The identification took place only days after a professional drug enforcement agent, seeing appellant for the second time in about a month, had a substantive, face-to-face, daylit conversation with him. Moreover, even if we felt that Agent Woods' identification was unsalvageable because of the suggestive circumstances in which he identified appellant's photograph, we would still not reverse appellant's conviction. Sufficient additional evidence was adduced that appellant was the man in the white Cadillac at the drug transaction. The man in the Cadillac introduced himself to Agent Woods as "E," the Cadillac was registered to appellant, another undercover agent who had seen appellant up close observed Agent Woods conversing with appellant, the transaction was both video and audio taped, and a government informant already familiar with appellant--and knowing him as "E"--identified him as the Cadillac driver. With this body of evidence available to the jury to corroborate Agent Woods' testimony, we are satisfied that any error in admitting the testimony would have been harmless.
 
 
 7
 Appellant also complains about a search warrant executed upon the apartment of his brother, Terrance Starks, shortly after Terrance testified for appellant in his first trial. Appellant claims that his right to a fair second trial was compromised because persons otherwise willing to testify on his behalf were intimidated by the prospect of being the target of a retaliatory search warrant. We have acknowledged Supreme Court dicta to the effect that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from involving judicial processes to obtain a conviction." United States v. Walls, No. 94-3033, slip op. at 11 (D.C.Cir. Dec. 8, 1995) (quoting United States v. Russell, 411 U.S. 423, 431-32 (1973)). But, the execution of the search warrant falls far short of the "coercion, violence or brutality to the person" required for us to find a due process violation. See Walls, slip op. at 11-12 (citing United States v. Kelly, 707 F.2d 1460, 1475-76 (D.C.Cir.), cert. denied, 464 U.S. 908 (1983)). The substance of Terrance's trial testimony certainly gave rise to probable cause to search his apartment for contraband acquired in the two years since his apartment was first searched in connection with appellant's trial. Terrance claimed ownership of a semi-automatic pistol, a bulletproof vest, and a variety of drug paraphernalia discovered in the apartment. Further basis for the search warrant was provided by the efforts at juror intimidation during the first trial coupled with Terrance's repeatedly improbable testimony and his apparent willingness to interfere with the trial proceedings by, allegedly, stealing evidence from government counsel's table. These factors combined with the fact that Terrance resided, at the time of trial, in an apartment building connected with a well-known drug distribution organization gave sufficient cause to search Terrance's apartment.
 
 
 8
 The trial court inadvertently failed to instruct the jurors that they were to draw no negative inferences from the existence of appellant's mug shot. Defense counsel requested the instruction, but did not object to the trial court's failure to give it. We do not think that the trial court committed plain error in failing to give the mug shot instruction. The jury could have concluded from the circumstances in which the mug shot was introduced that the photograph was a DMV photograph.
 
 
 9
 Finally, we perceive no error arising out of the mystery of the tapes and transcripts. The only two facts clear from the record are that the jury sent out a note requesting the audio tapes of the drug sale and the transcripts thereof, and that the jury convicted appellant 50 minutes later. The record is silent on whether the tapes and/or transcripts were given to the jury in the meantime. Appellant claims that it is most likely that the tapes and transcripts were given to the jury and that the jury improperly relied on the transcripts which were not evidence instead of the tapes which were. Difficulties abound with this claim of error. In the first place, there is simply no indication that the tapes and transcripts were or were not given to the jury. Even if they were, there is no reason to believe that the jury would ignore the court's express instructions that any discrepancies between the tape and the transcripts were to be resolved in favor of the tapes. And, even if the jury received the tapes and the transcripts and ignored the court's instructions and relied entirely on the transcripts, appellant points to nothing inculpatory that appears in the transcripts but not the tapes. The only evident discrepancy between the two is that a recurring racial epithet is set forth as "inaudible" in the transcript. As all parties to and subjects of the recorded conversations are black, we cannot imagine that this difference could have had the slightest effect.